ROBERTO MARTE et al., Appellants, v W.O. HICKOK MFG. CO., INC., et al., Respondents.

W.O. HICKOK MFG. CO., INC., Third-Party Plaintiff, v PRUDENTIAL-FELD COMPANY, INC., Third-Party Defendant-Respondent.

First Department, March 15, 1990

### APPEARANCES OF COUNSEL

*Herman Schmertz* and *Warren J. Willinger* of counsel *(Gair, Gair & Conason,* attorneys), for appellants.

*Arnold Stream* of counsel *(Carole A. Burns* with him on the brief; *Newman Schlau Fitch & Burns, P. C.,* attorneys), for Looseleaf Corporation and others, respondents.

### OPINION OF THE COURT

MILONAS, J.

Plaintiff Roberto Marte, then 28 years old and an employee of third-party defendant Prudential-Feld Company, Inc., sustained a partial amputation of his right arm when it was caught in the rotating gears of a Linoprint 600 Machine designed and manufactured by defendant W.O. Hickok Manufacturing Co., Inc. It is plaintiffs' contention that the device, utilized to make paper products used as school supplies was deficient and unsafe in a number of significant respects. The issues involved herein concern the discovery of certain material being sought by plaintiffs from both Prudential and Hickok.

On August 15, 1986, Hickok served upon Prudential a notice for discovery and inspection relating to the names and addresses of all of the latter's employees during a stated period of time; specifically, Hickok was interested in ascertaining which employees other than plaintiff operated the linotype machine in question on or prior to the date of the subject accident. Hickok also demanded the contents of plaintiff's personnel file. Numerous records and information, including a

computer printout of Prudential's employees and a copy of plaintiff's personnel file, were subsequently supplied by Prudential to Hickok, but copies of this material were never furnished to plaintiffs notwithstanding repeated requests therefor by plaintiffs, a motion to compel and a court order directing compliance. According to Hickok's counsel, an extensive review of its file, now nearly eight feet long, had failed to reveal the items being sought by plaintiffs. Prudential's attorney claimed that the complete computer printout of its employees could no longer be replicated, that such was also the situation with plaintiff's personnel file and that, moreover, all original records had been turned over to Hickok, and Prudential had not retained any copies.

Despite the fact that the reasons offered by Prudential and Hickok for not responding to plaintiffs' reasonable request for inspection and discovery are clearly incredible on their face, the Supreme Court declined to grant preclusion but deferred this matter to the consideration of the trial court. In that connection, it should be noted that Prudential does not adequately explain why it cannot reproduce for plaintiffs the material that it was able to procure for Hickok, particularly why its computer can no longer print out information it had previously generated. Nor is Hickok's excuse for its failure to comply credible. If Hickok's file is too voluminous for it to retrieve for plaintiffs the information provided by Prudential, then Hickok will certainly be incapable of locating these records in time for trial. Similarly, Prudential, having no means to duplicate the computer printout and having failed to retain any original documents after supplying Hickok with all of the originals, will be unable to make use of this material at trial. Consequently, if Hickok and Prudential persist in insisting that the documents are unavailable and, thus, cannot be furnished to plaintiffs, then Hickok and Prudential must at least be precluded from offering at trial any evidence derived from plaintiff's personnel file or regarding any other Prudential employees for the period requested.

Plaintiffs also served a notice for discovery and inspection demanding that defendants produce all statements, whether oral, written or electronically recorded, by plaintiffs which are in the possession of defendants. Prudential, in response, asserted that it was not in possession of any "adverse party statements made by plaintiff not previously supplied." Although it is not precisely clear what the words "not previously supplied" refer to, it can only be assumed that

Prudential denies knowledge of any statements by plaintiffs other than those made in the course of the examination before trial. Consequently, defendants should not be permitted to introduce as evidence any statements by plaintiffs, in whatever form, which were not uttered during the examination before trial and which defendants cannot demonstrate were furnished to plaintiffs' counsel prior to or within 60 days of the date of this order. In addition, plaintiffs requested "[a]ll video tape recordings, photographs, movies or visual reproductions or descriptions of plaintiffs purporting to depict plaintiff's activities." It is Prudential's contention that such material is attorney's work product and, therefore, not discoverable. We disagree.

The primary reason for offering visual reproductions of a plaintiff is to impeach his or her credibility and to undermine plaintiff's claims regarding the physical injuries suffered and the manner in which those injuries were sustained. Defense lawyers argue that if a plaintiff is aware of the existence of photographs, videotapes or movies, he or she will fashion testimony to conform to the contents of the visual reproduction and that plaintiff's uncertainty as to whether visual surveillance might be used against him or her will promote truthful testimony. However, visual reproductions may not always provide a correct picture of what they purport to depict since they are subject to manipulation. Lighting, camera angles, distances and speed can all be shaped by the photographer to suit a particular purpose, and visual reproductions can, moreover, be edited and spliced, and images superimposed on each other. Thus, the possibility that a plaintiff would be less likely to perjure him or herself where visual reproductions are excluded from discovery must be counterbalanced by the abuse which can occur when such reproductions are withheld, and plaintiff is deprived of adequate time and opportunity to examine the accuracy of the photographs, videotapes or movies in question *(see, Snead v American Export-Isbrandtsen Lines,* 59 FRD 148 [ED Pa 1973], for a cogent analysis of this issue; *see also,* Annotation, 19 ALR4th 1236, which discusses the legal authority with respect to pretrial discovery of the visual surveillance of a civil litigant by the opposing party). While there is some difference of opinion by courts as to whether a party is entitled to such pretrial discovery, it appears that the vast majority of cases support the practice of allowing disclosure where the material

being sought is in the exclusive possession of the movant's adversary.

In *Saccente v Toterhi* (35 AD2d 692), plaintiff was granted discovery and inspection of photographs of plaintiff taken by a representative of defendants' insurance carrier a short time after the accident and before plaintiff, who was an infant at the time, had retained an attorney. In the view of the First Department, four years had passed since the photographs were taken, and the same conditions were no longer present to enable plaintiff to duplicate these photographs. Moreover, the court considered the photographs to be a visual or photographic statement made by plaintiff and, accordingly, discoverable under CPLR 3101 (e). As the court therein aptly observed, "permitting discovery here is consonant with the modern trend toward allowing full disclosure and construing narrowly limitations, particularly where no prejudice is shown" *(supra,* at 692). There does not seem to be any other New York authority pertaining to the disclosure of visual reproductions of a civil litigant made by the opposing party, and Prudential's attempt to limit the holding of *Saccente v Toterhi (supra)* to the specific situation of "an infant with no attorney who gave permission for the photo to be taken four days after an accident and the photo's evidence couldn't be duplicated" is unpersuasive. The other cases cited by defendant *(Rosado v Mercedes-Benz of N. Am.,* 90 AD2d 515; *Barber v Town of Northumberland,* 88 AD2d 712) are inapplicable since they do not involve visual reproductions of a party to civil litigation by the opposing party.

While disclosure of the visual surveillance of a civil litigant by the adversary may properly be delayed until the party making the photograph, videotapes or movies has had the opportunity to depose fully the opposing party, thereby memorializing that individual's testimony so it can be utilized for impeachment purposes, discovery is appropriate to permit the subject of the visual reproductions to challenge the accuracy thereof. In the instant matter, Prudential has already conducted an extensive examination before trial of plaintiff regarding his injuries and disabilities, has caused plaintiff to be examined by its physicians and has received authorization to obtain plaintiff's medical records. Thus, if visual reproductions of plaintiff do exist, they should be supplied to his counsel or, alternatively, defendants precluded from making use of such evidence.

Consequently, the order of the Supreme Court, New York

County (Myriam J. Altman, J.), entered on or about January 5, 1989, which, *inter alia,* deferred to the trial court a ruling regarding the preclusion of the information and documents provided by third-party defendant Prudential-Feld Company, Inc. to defendant W.O. Hickok Manufacturing Co., Inc., denied discovery to plaintiffs of any photographs, videotapes or movies of plaintiffs' activities after the accident and determined that Prudential need not respond further to plaintiffs' notice of discovery of any written or oral statements of plaintiff Roberto Marte, should be reversed, on the law, the facts, and in the exercise of discretion to the extent appealed from, and plaintiffs' motion to preclude the information and documents furnished by Prudential to Hickok and to preclude any written or oral statements of plaintiff and videotapes, photographs or other visual reproductions of plaintiff made by defendants should be granted unless the foregoing material is supplied to plaintiffs within 60 days of the date of this order, without costs and disbursements.

Sullivan, J. P., Ross, Carro and Rosenberger, JJ., concur.

Order, Supreme Court, New York County, entered on January 5, 1989, unanimously reversed, on the law, the facts, and in the exercise of discretion to the extent appealed from, without costs and without disbursements, and plaintiffs' motion to preclude the information and documents furnished by Prudential to Hickok and to preclude any written or oral statements of plaintiff and videotapes, photographs or other visual reproductions of plaintiff made by defendants is granted unless the foregoing material is supplied to plaintiffs within 60 days of the date of this court's order.